PIGGOTT NURSERY COMPANY *v.* DAVIS.

4-4963

Opinion delivered February 28, 1938.

*E. G. Ward,* for appellant.
*T. A. French,* for appellee.

BAKER, J. The matters in controversy upon this appeal are disputed questions of fact. If we should attempt to set out in detail the testimony in relation thereto, the extension of our opinion would be burdensome and unprofitable. In order to expedite matters as much as possible we shall content ourselves with a narrative of the matters in issue and our comments thereon, quoting or paraphrasing only that portion of the testimony that may become necessarily essential. The Piggott Nursery Company, the appellant here, brought this suit in the chancery court to foreclose a mortgage given to secure a purported note alleged to have been executed by appellee, Blanche M. Davis, to Piggott Nurseries, Inc. Piggott Nurseries, Inc., is not the same organization as the appellant. It is alleged that the original note so given to the Piggott Nurseries, Inc., was delivered to Ed Blieden, as trustee in bankruptcy, when Piggott Nurseries, Inc., was adjudicated bankrupt; that Ed Blieden made a written assignment of the note to W. D. Stevens who shortly thereafter again assigned or transferred to Piggott Nursery Company. The prayer was for a decree

for the amount of the note, $5,000, as alleged, and for the foreclosure of a mortgage on the property described therein.

Blanche M. Davis, by answer duly verified, denied the execution of the $5,000 note; admitted the execution of a mortgage and pleaded no consideration therefor, and the bar of the statute of limitations for five years.

Decree was in favor of Blanche M. Davis, and Piggott Nursery Company has appealed.

Some facts are undisputed. Dr. T. L. Davis was indebted to Piggott Nurseries, Inc., and executed his note to that company for $4,463.52, dated January 1, 1928. This was due one year after date and bore interest at 7 per cent. The note was indorsed by E. H. Ballard, and was secured by certificates of capital stock of Piggott Nurseries, Inc., of the face value of $3,500, and capital stock of the Bank of Piggott, of the face value of $1,500. About three months after the execution of this note Dr. Davis died. He left surviving him his widow, Blanche M. Davis, as principal beneficiary under his will, but the estate was subject to the payment of his debts. Mrs. Davis, at that time, appointed E. H. Ballard as her attorney in fact with power to sell lands, which she had received from her husband's estate, and with power to sell gravel from some of the lands and collect proceeds from the sale of such gravel.

The note so executed by Dr. T. L. Davis was never probated against his estate. On January 1, 1930, it is alleged that Mrs. Davis executed a $5,000 note, intended to take up or at least to be substituted for the $4,463.52 note that Dr. Davis had executed. It was on January 24th thereafter that Mrs. Davis executed the mortgage sued on. About that time, the Piggott Nurseries, Inc. stock and the Bank of Piggott stock held for the security for the aforesaid note executed by Dr. Davis was taken down and distributed among some other creditors of the Davis estate. It is alleged that Mrs. Davis executed this $5,000 mortgage in order that she might be permitted to take down this stock to be used in the settlement of other debts. She denies, however, the correctness of this

statement. The record does not make clear just what the negotiations were or who authorized them, whereby the certificates of nursery stock and the bank stock were delivered to the other parties. That fact, perhaps, is not essential now. E. H. Ballard made no sale of any property under the power of attorney except some gravel. At first, when gravel was sold and money collected therefor, checks or proceeds therefrom were sent to Mrs. Davis, after deducting five per cent. as a commission. Finally Ballard, who held the note given by Dr. Davis, and later also the $5,000 note, if one was executed, insisted that at least a part of the money collected by him should be appropriated by him and he applied to the payment of this indebtedness. He wrote Mrs. Davis to this effect. She returned to him a check for $38.58 in response to his letter. Thereafter, he made certain collections and applied those. Piggott Nurseries, Inc., went into bankruptcy, and among the assets delivered over for the benefit of creditors was this debt alleged to have been owing by Mrs. Blanche Davis. The trustee in bankruptcy failing to collect the debt, and if not having been presented against the estate, the original security, the capital stock of Piggott Nurseries, Inc. and the bank stock having been detached, the note and mortgage were offered for sale and W. D. Stevens, who was one of the principal stockholders of the Piggott Nursery Company, offered, and it was sold to him for $500. Stevens, Ballard, and Miss Hughes, and perhaps some other witnesses, all say that it was the $5,000 note that was delivered to the trustee in bankruptcy that he sold. Certified copies, however, of the pertinent parts of the proceedings in bankruptcy show that there was sold a note, not for $5,000 but for $4,463.52, dated January 1, 1928. This is a note of the late Dr. T. L. Davis, which it is not even claimed that Mrs. Davis signed.

The same note was described in the order of the referee confirming the sale to W. D. Stevens, and no mention is made in any of these instruments of the alleged $5,000 note, though the mortgage itself purports to secure a $5,000 note, and it is alleged by several of these

witnesses that the original note executed by Dr. Davis and the $5,000 note alleged to have been executed by Mrs. Davis were pinned together and kept together until about the time of the institution of this suit. It was not alleged in the original complaint that either of these instruments was lost, but after the defendant, Blanche Davis, had denied the execution of the $5,000 note, under oath, and after some proof had been taken, it was shown that the notes could not, or would not, be produced, an amendment was filed to the complaint alleging the loss of both notes, but the Piggott Nursery Company offered what was alleged to be a copy of the $5,000 note, reproduced from records, showing credits indorsed thereon, the said credits being the same, it was alleged, as had been entered upon the margin of the mortgage, which was produced and offered in evidence, and from these credits on the margin of the mortgage similar credits were entered upon the margin of the record. They were the same as had been kept by Ballard.

The first question for determination, we think, is the one in regard to the execution of the note for $5,000, the second question is one of limitations. Was the obligation barred, whether it be the first or second of these notes? Other questions are incidental hardly rising to such dignity as to require a discussion. One of these incidental matters may be mentioned here.

Mrs. Davis admits that she executed the $5,000 mortgage, but says that it was without consideration. It is shown that she took the property belonging to her husband's estate, subject to his debts. If her object was to pay or secure the indebtedness owing by the estate in order that she might hold the property, there was consideration. This is appellant's contention. If true, it would appear that this plea of no consideration is not available to her. She states otherwise.

The question of the execution of the $5,000 note is one of serious difficulty. If it depended alone upon the testimony of witnesses who relied upon their recollection or memory as to what was done, we would have no hesitancy in holding that the weight of their testimony is

742

against the contention of Mrs. Davis to the effect that she did not sign or execute such note. Miss Hughes, Stevens, Ballard, and others perhaps, testified to having seen the $5,000 note alleged to have been executed by her and the mortgage, execution of which she admits, showing that it was given to secure the payment of the $5,000 note. These witnesses, however, all say that the original note was delivered over in the bankruptcy proceedings; that Stevens bought from the trustee in bankruptcy, and that Stevens transferred to the appellant. It is significant that no note of $5,000 was found listed in the schedules in bankruptcy. It is likewise significant that no note of that kind was sold by order of the referee in bankruptcy. The trustee sold the note executed by Dr. T. L. Davis, on January 1, 1928. Stevens bought that note and the sale was confirmed to him for that note. It may have been just an unfortunate occurrence, but that note is now lost, if it were executed. It was never mentioned anywhere in the bankruptcy proceedings.

These same witnesses, who alleged that the $5,000 note was delivered to Stevens and by him set over and transferred to the Piggott Nursery Company, allege it to be the same note Ballard held for the company prior to the bankruptcy of Piggott Nurseries, Inc. Besides, on October 25, 1932, long before the note was claimed to have been lost, Stevens wrote Mrs. Davis a letter asking for payment of a note for $4,463.52, with interest. This was after his purchase from the trustee in bankruptcy.

We are unable to say in this present state of the record that the chancellor's finding in favor of Mrs. Davis, the appellee, is contrary to the preponderance of the evidence and his finding in that regard will, therefore, be upheld.

Did the trial court properly determine the question in regard to the statute of limitations? It is pleaded, and we think shown, by the evidence, beyond question, that Ballard collected several items from the sale of gravel and gave credit of several of these items upon the note before it was barred by the statute and within the period of five years next before the filing of the suit.

Ordinarily this bare statement, if unqualified, would appear to be sufficient to have kept the note alive, and the debt or lien in existence and subject to foreclosure. An analysis, however, of the facts in relation to the alleged payments or collections, and their application may result in other conclusions.

It is argued most forcefully that Ballard who held the power of attorney was the agent and attorney in fact of Mrs. Blanche M. Davis; that being her agent, collecting money for her, he paid the same over for her benefit upon an obligation she had assumed by execution of the mortgage for $5,000, and that she is bound thereby. It is likewise undisputed that when Ballard wrote the first letter to Mrs. Davis insisting that she should permit at least a division of the money collected to be applied upon this debt, he was then representing the Piggott Nurseries, Inc., and was trying to collect from her money which was due by her husband upon a note she had not signed. These first payments were made before the alleged execution of the note for $5,000 by Mrs. Davis.

It appears that Ballard was in charge of Piggott Nurseries, Inc. He continued in charge until it went into bankruptcy. It is true at this same time he was selling gravel under power of attorney for Mrs. Davis. While it is argued that the purport of this power of attorney was such as to constitute him a general agent, that seems not to have been a principal question argued or determined upon the trial below. It is apparent, however, that his agency was limited in that he had power only to sell lands and sell gravel and to collect therefor. His collection of moneys for the Piggott Nurseries, Inc., and for Piggott Nursery Company was not any part of the authority given or necessarily implied under the power of attorney.

Such credits as were indorsed upon the mortgage appear as follows: February 21, 1930, $155.29. July 21, 1930, $38.58. This was the payment made by the return to Ballard of that amount, which he had sent to Mrs. Davis, requesting her at the same time to permit the retention of at least a part of the collections made by

him to apply upon the debt. July 25, 1930, $95.85. January 7, 1931, $300. June 4, 1931, $182.18. July 8, 1931, $113.02. September 2, 1932, $4.60. April 4, 1936, $13.60. May 16, 1936, $2.

This suit was filed on the 16th day of February, 1937, and Ballard, for Piggott Nursery Company, verified the complaint. It, therefore, appears that in order for liability to be determined that payments must have been made with the consent, either express or implied, of Mrs. Davis, within five years next preceding February 16, 1937, or on or after February 16, 1932, otherwise the debt and lien thereof were barred at the time of filing the suit. Within that five-year period, in fact for a longer period than that, since July 8, 1931, when a credit of $113.02 was made, there were no other credits except $4.60 on September 4, 1932, and the $13.60 on April 4, 1936, and $2 on May 16, 1936.

That these amounts were small is, of course, immaterial, but we think they are sufficient, although almost insignificant, to prevent the running of the statute of limitations if they may be treated as authorized.

The only credit with which Mrs. Davis had anything directly to do at the time indorsement was made upon the note or mortgage showing same, was the amount of $38.58, a check returned by her to Ballard upon his suggestion that payments coming into his hands should be divided, one-half to be credited upon the note. In response to his suggestion is her letter which is preserved and appears in the record. It does not authorize Ballard to divide the funds or to credit his collections upon the note held by him for the Piggott Nurseries, Inc. In fact, she objected to the arrangement he suggested and advised that she thought it fairer that she divide whatever money she got among all her creditors.

He was not authorized thereby to make application of any moneys in his hands upon any debt for her, and it was not contended at the time he testified that such an arrangement had been made.

A part of his testimony is quoted: "Q. I will ask you if it isn't a fact that at various times Mrs. Davis

talked to you about the money you had collected under this power of attorney and tried to get you to pay it over to her and even threatened to bring suit against you to collect it? A. She did not. The last time I talked to her about going fifty-fifty on the gravel, and immediately after that she got her back up at me about the money and hasn't spoken since. Q. You have already testified that when you made its application that she began to raise 'old ned.' A. In fact, she began to raise 'old ned' at first, if you ask me, 'old ned' is her first name. . . . Q. But when she voiced a question as to later payments, you took that for authority to apply not only half but all of it? A. She never objected did she. Q. She never authorized you to, did she? A. No, but I think I was a darn fool for not taking it all from the first.''

This testimony, we think, is explanatory of the conduct of the parties. Mrs. Davis had not in fact consented to the use of her money and within a period in excess of five years there had been so little money taken in or collected and applied by Ballard that it is highly probable she did not know of these collections or what he did with them. This is easily believable since they had not been on speaking terms for more than five years or since July, 1930. At least, she did not authorize, expressly or impliedly, these amounts to be credited. We have already seen that Ballard, who was president of the Piggott Nursery Company, and who was also the managing head of the Piggott Nurseries, Inc., did not claim any express authority to make application of such moneys as he got into his possession, but merely assumed that he had a right to do so. Unauthorized application of these funds, under the circumstances, did not serve to toll the statute. The trial court was correct in so holding.

It is explained that the Piggott Nursery stock, face value of which was $5,000, was withdrawn and bank stock substituted therefor. Mrs. Davis denied that she received this stock. Ballard had had charge of it, and whatever the arrangement was it must have been satisfactory to him. Ballard says at the time of the withdrawal of

this Piggott Nursery stock it was worth three for one or $15,000. It was about this time that he was asking for the additional security, he says, by having the mortgage executed. Mrs. Davis explains, and this is denied by Ballard, that upon failure of the bank whose stock had been put up, Ballard advised her to execute the mortgage so that she might thereby protect the property against a recovery by the Bank Commissioner in charge of the insolvent bank. It was upon this testimony, as we understand, she was urging or insisting upon the fact that there was no consideration for this mortgage. Her explanation is as plausible as that of the appellant, and with the background of apparent contradictions, the court might well have found her statement to be true, though it is unnecessary to decide that question. The conclusions reached as to the facts leave no controverted question of law for our determination.

The claim, whether upon the alleged new note as a renewal of the obligation, or the old, was barred.

Decree affirmed.